UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE FREDY VEGA SERRATO,

     Petitioner,

v.
                                 Case No: 6:26-cv-599-JSS-LHP

LOUIS A. QUINONES, JR., TODD
LYONS, PAMELA BONDI,
GARRETT RIPA, IMMIGRATION
& CUSTOMS ENFORCEMENT
(ICE), KRISTI NOEM, and
DEPARTMENT OF HOMELAND
SECURITY (DHS),

     Respondents.

_____/

## **ORDER**

After the court granted Petitioner's emergency motion for a temporary restraining order (TRO) requiring Respondents to keep him detained at the Orange County Jail pending the resolution of this case, (*see* Dkt. 6), Respondents responded to the emergency motion, (*see* Dkt. 11), and on March 31, 2026, the court held an evidentiary hearing on whether to convert the TRO to a preliminary injunction, (*see* Dkt. 9). Upon consideration, for the reasons outlined below, the court converts the TRO to a preliminary injunction.

## **BACKGROUND**

Petitioner is a "citizen of Mexico who has been living in the United States since on or about 1997." (Dkt. 1 at 2.) Petitioner has five children who are United States citizens—two of whom are minors—and Petitioner is authorized to work in the United

States. (*Id.* at 2, 5.)  On or about March 15, 2026, Petitioner was arrested in Volusia County for violation of a county ordinance prohibiting open containers of alcoholic beverages on the beach. (*Id.* at 5.)  Petitioner pled guilty the following day and was sentenced to time-served of two days, but Petitioner was not released. (*Id.*)  Instead, the next day, Petitioner was transported to the Orange County Jail where he was booked on an Immigrations and Customs Enforcement (ICE) detainer and where he remains without having had a bond hearing. (*Id.*)

On March 18, 2026, Petitioner initiated this case by filing an emergency petition for a writ of habeas corpus. (*Id.*)  Petitioner maintains that his continued detention lacks probable cause, violates due process, and is otherwise unlawful in the absence of a bond hearing. (*Id.* at 2, 5–10.)  Accordingly, Petitioner seeks (1) a writ of habeas corpus directing his immediate release, (2) preliminary injunctive relief enjoining Respondents from further unlawful detention of Petitioner and from placing Petitioner under any restrictive supervision conditions, and (3) a declaration that Petitioner's detention based solely on an ICE detainer is unlawful, among other things. (*Id.* at 10– 11.)

The parties did not introduce additional evidence or call witnesses at the evidentiary hearing.  Instead, the parties presented arguments related to Petitioner's pleading (Dkt. 1) and the emergency motions (Dkt. 2).  Petitioner made three arguments.  First, he argued that this court has jurisdiction over this case under 28 U.S.C. § 2241.  Second, he maintained that given the United States Supreme Court's statements in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and his nearly 29 years of

living in the United States, 8 U.S.C. § 1226—not 8 U.S.C. § 1225—applied, thereby entitling him to a bond hearing.  Third, he requested immediate release, asserting that an order requiring a bond hearing before an immigration judge would be illusory.  In response, Respondents contended that the plain text of sections 1225 and 1226, rather than *Jennings*, controls this case and requires the application of section 1225 such that Petitioner is not entitled to a bond hearing.  (*See* Dkt. 9.)  Nevertheless, Respondents "acknowledge the overwhelming volume of district court decisions" that state otherwise, and further "acknowledge that in this District alone, the overwhelming number of recent decisions have been adverse to Respondents' [s]ection 1225 position." (*Id.* at 3–4.)  Accordingly, Respondents alternatively argue that if section 1226 applies, the proper remedy is a bond hearing.  Respondents represented that if the court determines that section 1226 applies, they will work to expedite the bond hearing.

**APPLICABLE STANDARDS**

Federal Rule of Civil Procedure 65 and Local Rules 6.01 and 6.02 govern preliminary injunctive relief, which constitutes an extraordinary remedy, *see Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1313 (11th Cir. 2020).  Rule 65 requires "[e]very order granting an injunction" to "state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).  Rule 65 also states that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the

court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). That said, the "court has [the] discretion to waive [the security] requirement imposed by Rule 65(c)." *Disability Rts. Fla., Inc. v. Jacobs*, 473 F. Supp. 3d 1335, 1340 (M.D. Fla. 2019).

A "preliminary injunction is appropriate where the movant" satisfies four requirements: (1) the claim underlying the motion has "a substantial likelihood of success on the merits," (2) the "preliminary injunction is necessary to prevent irreparable injury," (3) "the threatened injury outweighs the harm that the . . . preliminary injunction would cause to the non-movant," and (4) the "preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034 (11th Cir. 2001); *accord* M.D. Fla. R. 6.01(b), 6.02(a)(1). A preliminary injunction cannot be granted "unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Wall v. Ctrs. for Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration adopted and quotations omitted).

## ANALYSIS

The court first discusses the four prerequisites for obtaining a preliminary injunction, addressing the likelihood of success on the merits and irreparable harm independently and the balance of the harms and public interest together. *See Parker*, 275 F.3d at 1034. The court then considers the security requirement for preliminary injunctive relief. *See* Fed. R. Civ. P. 65(c).

**A. Likelihood of Success on the Merits**

Petitioner has demonstrated a substantial likelihood of success on the merits to convert the TRO to a preliminary injunction. First, regarding subject matter jurisdiction, district courts have jurisdiction to "consider[] challenges to the lawfulness of immigration-related detention . . . in habeas proceedings." *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Although the Immigration and Nationality Act (INA) contains jurisdiction-stripping provisions, they are narrow and do not apply here. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("[8 U.S.C. § ]1252(b)(9) bars review of claims arising from actions or proceedings brought to remove [a noncitizen]. . . . [Section ]1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined. . . . [8 U.S.C. § ]1252(g) is similarly narrow. That provision limits review of cases arising from decisions to commence proceedings, adjudicate cases, or execute removal orders. [The Supreme Court has] previously rejected as implausible the Government's suggestion that [section] 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation." (alterations adopted and quotations omitted)).

Further, regarding the merits of Petitioner's pleading, "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every [noncitizen within the jurisdiction of the United States] from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *see Plyler v. Doe*, 457 U.S.

202, 210 (1982) ("Whatever his status under the immigration laws, [a noncitizen] is surely a 'person' in any ordinary sense of that term. [Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Hincapie v. U.S. Att'y Gen.*, 604 F. App'x 882, 884 (11th Cir. 2015) ("The Fifth Amendment right to due process applies to non[]citizens in removal proceedings." (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Rodriguez v. Quinones*, No. 6:26-CV-187-PGB-DCI, 2026 WL 194218, at *2 (M.D. Fla. Jan. 26, 2026) ("Noncitizens present in the United States are entitled to due process under the Fifth Amendment[, . . . including] protection against deprivations of liberty, such as immigration detention, without due process of law." (quotation omitted)). Accordingly, "[l]imitations like the Due Process Clause . . . restrict the Government's power to detain noncitizens," and "[c]ourts must review immigration procedures and ensure that they comport with the Constitution." *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1334 (M.D. Ga. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

Here, the parties agree that the central issue is whether Petitioner's detention is governed by 8 U.S.C. § 1225 or 8 U.S.C. § 1226. *Compare* 8 U.S.C. § 1225(b)(2)(A), *with* 8 U.S.C. § 1226(a). Importantly, a noncitizen detained under section 1226 may be entitled to a bond hearing. *Jennings*, 583 U.S. at 306 ("Federal regulations provide that [noncitizens] detained under [section] 1226(a) receive bond hearings at the outset of detention."); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579–80 (2022) ("Noncitizens detained under [section] 1226(a) receive bond hearings after the Government initially

detains them.").

The Supreme Court analyzed the interplay between sections 1225 and 1226 in *Jennings*, 583 U.S. 281. The Court explained that section 1225(b) "applies primarily" to noncitizens "seeking entry into the United States." *Id.* at 297. In contrast, section 1226 applies to noncitizens "already present in the United States." *Id.* at 303; *see Johnson*, 596 U.S. at 579 (explaining that section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021) (differentiating between sections 1225 and 1226 and explaining that each represents a "sequential step[] of the removal process" in that section 1225 "provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing," while section 1226 "authorizes the arrest and detention of [noncitizens] pending a decision on whether they are to be removed"); *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) ("8 U.S.C. § 1226[] provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."). Indeed, noncitizens present in the United States are treated differently from those seeking entry. *See Zadvydas*, 533 U.S. at 679 ("Once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent."); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those [noncitizens] who have

come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.  In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely on the threshold of initial entry."); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (explaining that noncitizens "who have established connections in this country have due process rights in deportation proceedings," while those who are apprehended "at the threshold of initial entry" lack the same constitutional protections).

As the Supreme Court recognized in *Jennings*, sections 1225 and 1226 differentiate between noncitizens "seeking entry into the United States" and noncitizens who are "already present in the United States."   583 U.S. at 303. "Interpreting [section] 1225 to govern all noncitizens present in the country who had not been admitted leaves [section] 1226 with no apparent application."  *Patel v. Hardin*, No. 2:25-CV-870-JES-NPM, 2025 WL 3442706, at *5 (M.D. Fla. Dec. 1, 2025) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).  Accordingly, most courts considering this issue have determined that noncitizens like Petitioner, who have been present in the United States for years, are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2); rather, these noncitizens fall under the permissive provisions of section 1226, entitling them to a bond hearing.  *See Izaguirre v. Mordant*, No. 2:26-cv-00048-SPC-DNF, 2026 WL 194214, at *1 (M.D. Fla. Jan. 26, 2026) (concluding that section 1226 applied to a noncitizen "who entered the country without inspection" and was later detained within the United States, thereby entitling him to a bond hearing); *Jacobo*

- 8 -

*v. Ripa*, No. 2:25-CV-1190-KCD-NPM, 2026 WL 145460, at *1 (M.D. Fla. Jan. 20, 2026) (determining that the detention of a noncitizen who "illegally entered the United States nearly [twenty] years ago" was governed by section 1226); *Ortiz v. Mordant*, No. 2:25-cv-1160-JES-DNF, 2026 WL 44815, at *1 (M.D. Fla. Jan. 7, 2026) (concluding that section 1226 applied to a noncitizen who "entered the United States without inspection" such that the noncitizen was entitled to a bond hearing); *Ortiz v. Noem*, No. 3:25-cv-1386-MMH-MCR, 2025 WL 3653217, at *6 (M.D. Fla. Dec. 17, 2025) ("It is undisputed that [the petitioner] entered the United States without inspection and has been residing here since 2013.  Thus, he is not properly detained under [section] 1225(b)(2). . . . Instead, his detention is governed by [section] 1226, and he is therefore entitled to a bond hearing before an immigration judge."); *Garcia v. Noem*, No. 2:25-CV-00879-SPC-NPM, 2025 WL 3041895, at *5 (M.D. Fla. Oct. 31, 2025) (determining that a noncitizen was entitled to a bond hearing under section 1226(a) because he was detained within the United States); *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *2 (M.D. Fla. Oct. 29, 2025) (concluding that section 1226 applied to a noncitizen who illegally entered the United States and resided within this country for more than a decade before he was detained, thus entitling him to a bond hearing); *see also Castillo Reyes v. Rose*, No. 25-7138, 2026 WL 75816, at *1 n.2, *3–6 (E.D. Pa. Jan. 9, 2026) (observing that in this context, most courts to have considered whether a noncitizen, arrested within the United States, is detained under section 1225 or section 1226 have concluded that the latter provision governs and that the noncitizen is entitled to a bond hearing before an immigration

judge); *but see Lopez v. Dir. of Enf't Operations*, Case No: 3:25-cv-1313-JEP-SJH, Dkt. 9 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation rooted in the cannon against surplusage that noncitizens seeking admission form "a distinct and narrower class than applicants for admission," and declining to apply language from the United States Supreme Court's decision in *Jennings,* which the court deemed inapposite dicta).

Here, Petitioner claims that he was arrested while physically present in the United States. (Dkt. 1.) Under the circumstances, the court concludes that section 1226, as opposed to section 1225, governs Petitioner's detention. *See Jennings*, U.S. at 303 (stating that section 1226 applies to noncitizens "already present in the United States"); *Johnson*, 596 U.S. at 579 (explaining that section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Diaz*, 53 F.4th at 1196 (explaining that section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal"). However, according to his pleading, Petitioner remains detained. (*See* Dkt. 1 at 2.) Petitioner's continued detention without a bond hearing likely violates federal law. *See Patel*, 2025 WL 3442706, at *5 ("As a noncitizen detained under [section] 1226(a), [the petitioner] has a right to a bond hearing."); *Izaguirre*, 2026 WL 194214, at *1 ("As a noncitizen detained under [section] 1226(a), [the petitioner] has a right to a bond hearing. . . . [His] mandatory detention under [section] 1225(b)(2) is [therefore] unlawful."); *Ortiz*, 2025 WL 3653217, at *6

(concluding that it was unlawful for the government to detain a noncitizen who entered the United States without inspection without the benefit of a bond hearing before an immigration judge).

In light of the above, Petitioner has shown a substantial likelihood of success on the merits.  The court has jurisdiction over this habeas case, and because section 1226 applies under *Jennings*, Petitioner is entitled to—but has not yet received—a bond hearing before an immigration judge.  The court agrees with Respondents that the proper remedy is to order the immigration courts to provide Petitioner with a prompt bond hearing.[1]

### B. Irreparable Harm

"To establish irreparable harm, the movant must show that the injury is immediate and is not compensable by monetary damages."  *Lead Creation Inc. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *4 (M.D. Fla. Feb. 14, 2023) (quotation omitted).  Here, a preliminary injunction is required, as "the deprivation of constitutional rights . . . constitutes irreparable injury."  *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020) (quotation omitted); *Rodriguez*, 2026 WL 194218, at *2.  "Without interim relief to maintain the status quo, [Petitioner] could be deported or removed

---

[1] At Petitioner's merit-based § 1226 merit-based bond hearing—at which findings are made as to whether Petitioner is a flight risk or is a danger to the community—the court urges the immigration judge to consider Petitioner's circumstances.  This includes, but is not limited to, the fact that Petitioner has lived in the United States for more than twenty years, he has children who are United States citizens—two of whom are minors—and that his single criminal infraction over the course of his more than twenty years in the United States was for violating an open container law, a non-violent offense.

from this [c]ourt's jurisdiction, effectively foreclosing any recourse." *Lopez*, 2025 WL 2732717, at \*2; *see Soliman v. United States*, 296 F.3d 1237, 1243 (11th Cir. 2002) (finding that a challenge solely to the petitioner's detention became moot upon his deportation); *Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2001) (concluding that a petitioner's challenge to her detention survived a mootness challenge because she also challenged her order of removal). Given the likelihood that Petitioner is being unlawfully detained—because he is entitled to a bond hearing that he has not yet received—the court deems it necessary in the interests of justice, fairness, and efficiency for Petitioner to remain nearby at the Orange County Jail and for him to receive a prompt bond hearing before an immigration judge. Petitioner has satisfied the court that irreparable harm will occur absent this relief.

## C. Balance of the Harms and Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences" when they provide injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Here, the balance of equities and public interest favors injunctive relief because Petitioner is being unlawfully detained absent a bond hearing. Petitioner has established not only that his threatened injuries outweigh the harms that a preliminary injunction would cause Respondents but also that a preliminary injunction would serve the public interest: ensuring due process maintains an appropriate balance of interests. *See Zadvydas*, 533 U.S. at 690; *Mejia v. Noem*, No. 2:25-cv-981-SPC-NPM, 2025 WL 3078656, at \*3 (M.D. Fla. Nov. 4, 2025) (citing *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005), and *Rodriguez v.*

- 12 -

*Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

### D. Security

Rule 65(c) provides that the court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although security is typically required for preliminary injunctive relief, "the amount . . . is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (alterations adopted and quotation omitted). Having considered the matter, the court exercises its discretion not to require security at this time. *See Saint Remy v. Bondi*, No. 3:26-cv-28-MMH-SJH, 2026 WL 851385, at *1 (M.D. Fla. Jan. 12, 2026) ("[B]ecause there is no realistic likelihood of prejudice to [the r]espondents from the issuance of this limited restraint, the [c]ourt exercises its discretion to dispense with the requirement that [the petitioner] provide security[.]"). That said, this issue may be revisited at any time, and a monetary security may be imposed should an appropriate application be made in the interests of justice.

### CONCLUSION

Accordingly:

1. Petitioner's emergency motion for a preliminary injunction (Dkt. 2) is **GRANTED**, and the TRO (Dkt. 6) entered in this case on March 19, 2026, is **CONVERTED** to a preliminary injunction.

2. Respondents and those in privity with them are **PRELIMINARILY ENJOINED** from transferring Petitioner from the Orange County Jail until further order of the court.  Respondents may transfer Petitioner from the Orange County Jail for the limited purpose of the bond hearing before the immigration judge.

3. The court does not require monetary security from Petitioner for the preliminary injunction, as the court deems such security unnecessary at this time.

4. On or before April 5, 2026, Respondents shall ensure that Petitioner has a bond hearing before an immigration judge and shall file a joint status report informing the court of the status of the case.

5. The court does not decide the ultimate merits of Petitioner's pleading (Dkt. 1) because the briefing period has not yet expired.

**ORDERED** in Orlando, Florida, on April 2, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

- 14 -